UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREASURE CHEST THEMED VALUE MAIL, INC., <br><br> Plaintiff, <br><br> -against- <br><br> DAVID MORRIS INTERNATIONAL, INC., <br><br> Defendant. | 17-cv-01 (NRB) |

**PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

Plaintiff Treasure Chest Themed Value Mail, Inc. respectfully submits the proposed conclusions of law enumerated below.  For convenience of reference, each proposed finding is separately enumerated, and the proposed conclusions are separated into topical subsections.

**Conclusions of Law**

**I.     PLAINTIFF TREASURE CHEST IS ENTITLED TO JUDGMENT AGAINST DEFENDANT DAVID MORRIS INTERNATIONAL, INC. ON ITS CLAIM FOR BREACH OF CONTRACT.**

1.     In a contract action, the court's primary objective is to give effect to the intentions of the parties thereto based on the language they chose to use. *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).

2.     Where contractual language is unambiguous, the parties' rights thereunder are to be interpreted from the terms expressed in four corners of the instrument itself without

consideration of extrinsic evidence. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).

3.  Contractual language is unambiguous if the language has a definite and precise meaning and is not capable of more than one meaning when viewed objectively by a reasonably intelligent person, or where reasonable minds could not differ on what a term means. *See JA Apparel Corp v. Abboud*, 906 F.2d at 397.

4.  Under New York law, to recover for breach of contract, a plaintiff must prove: (i) the existence of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

5.  The parties do not contest that they entered into that certain Vacation Travel Mailing Participation Agreement dated January 25, 2016 (the "Contract").

**A. Treasure Chest's Performance**

1.  Under the terms of the Contract, Treasure Chest agreed to:

a)  mail DMI's advertising materials, a double-sided flier measuring approximately 5"x8" and depicting an advertisement for AutoEurope on one side and one for A-Rosa Cruises on the other side ("DMI's Insert"), to at least 730,000 vacation travelers along with a response card bearing the logos of A-Rosa Cruises and AutoEurope; and

b)  provide more than 300,000 follow-up digital impressions for two different products.

6.  A preponderance of the evidence shows that Treasure Chest exceeded its obligations under the Contract.

7. Treasure Chest mailed DMI's Insert with response card to 1,453,000 vacation travelers and published DMI's digital materials for four different products in its newsletter and social media pages to approximately 349,000 individuals.

8. Also under the terms of the Contract, Treasure Chest guaranteed that it would provide DMI with more than 3,000 leads and, if it failed to provide so many leads, would permit DMI to participate in another mailing campaign free of charge.

9. A preponderance of the evidence shows that Treasure Chest provided DMI with 6,118 leads.

### B. DMI's Breach

10. The plain language of the Contract reflects that, in exchange for Treasure Chest's performance, DMI was required compensate Treasure Chest as follows:

a) pay $45,000 to Treasure Chest on or before July 1, 2016;

b) provide Treasure Chest with up to $40,000 in airfare and hotel accommodations at fair market value; and

c) provide Treasure Chest with up to $10,000 in A-Rosa cruises tickets.

11. DMI admits that it did not compensate Treasure Chest as required in the Contract.

### C. Treasure Chest's Damages

12. According to the plain language of the Contract, DMI was to provide Treasure Chest with cash and travel benefits valued at $95,000.

13. Treasure Chest acknowledges that DMI provided $13,000 worth of hotel accommodations before DMI refused to honor additional reservations.

14. Accordingly, Treasure Chest has suffered damages of $82,000.

## II. DMI CANNOT PREVAIL ON ITS COUNTERCLAIM FOR FRAUD.

15. As a matter of law, DMI cannot prevail on its counterclaim for fraud in the inducement.

16. Under New York law, an action for fraud contains five elements: a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff. *May Dept. Stores Co. v. Int'l. Leasing Corp., Inc.*, 1 F.3d 138, 141 (2d Cir. 1993).

17. DMI has failed to establish that Treasure Chest made any materially false statements to DMI, let alone any intention on the part of Treasure Chest to mislead DMI.

### A. The Statements of Treasure Chest Are Not Actionable.

18. DMI's allegations of fraud are based entirely upon DMI's position that Treasure Chest made statements concerning the profits that DMI could hope to realize.

19. Treasure Chest denies that the statements cited by DMI in its Answer with Counterclaims constitute representations concerning the profits that DMI could hope to realize.

20. Even if this Court were to determine that Treasure Chest's statements do constitute representations of DMI's expected profits, such statements are not actionable under New York law.

21. New York courts have interpreted promises of success and other forward-looking statements as mere "puffery" and overly optimistic opinions, which a traditional part of most business transactions and do not constitute fraud. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("'puffery' or 'misguided optimism' is not actionable as fraud"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (holding that a defendant's appraisal letter estimating the value of a painting constituted a "nonactionable opinion"); *ESBE Holdings, Inc. v.*

*Vanquish Acquisition Partners, LLC*, 50 A.D.3d 397, 398 (1st Dept. 2008) ("Claims based upon defendants' projections of returns on investment, such as the expected acquisition of the Orient Cruise Lines and the projected Southeast Cruise Holdings acquisitions, are not actionable because such projections are merely statements of prediction or expectation."); *See also Brown v. Lockwood*, 76 A.D.2d 721, 731 (2d Dept. 1980) ("It is the general rule that fraud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct . . . Mere unfulfilled promissory statements as to what will be done in the future are not actionable as fraud.").

22. Accordingly, Treasure Chest's statements are not actionable and DMI cannot prevail on its claim for fraudulent inducement.

**B. DMI Failed to Perform its Due Diligence.**

23. Even if Treasure Chest had made materially false statements, which it maintains that it has not, DMI would be estopped from claiming justifiable relyiance on such statements.

24. Under New York law, where a plaintiff has the means of knowing, by the exercise of due diligence, the truth or quality of representation, he must exercise such means in order to prevail on a claim of fraudulent inducement. *Schlaifer Nance & Co. v. Estate of Any Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

25. The due diligence requirement is even stronger for sophisticated parties. *Id.* (*quoting Grumman Allid Indus. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984) ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.").

26. Here, Treasure Chest cited the source for statistical information concerning the effectiveness of direct mailing provided on its website.

27. Furthermore, the president of DMI, David Morris, is an individual with over 35 years in the travel industry, is aware of other companies that have engaged Treasure Chest in the past and is aware of relationships with individuals that he has in common with the president of Treasure Chest.

28. Notwithstanding the foregoing, DMI failed to make any inquiry whatsoever into Treasure Chest's reputation in the industry, let alone any representations communicated by Treasure Chest.

### III. AS A MATTER OF LAW, DMI CANNOT PREVAIL ON ITS CLAIM FOR UNJUST ENRICHMENT.

29. It is well-settled that the existence of a valid written contract precludes a claim for unjust enrichment. *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 157 F.3d 956, 964 (2d Cir. 1998); *Sofi Classic SA De CV v. Hurowitz*, 444 F.Supp.2d 231, 249 (S.D.N.Y. 2006); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).

30. Here, it is undisputed that a written contract exists between the parties, accordingly Defendant's counterclaim for unjust enrichment must be dismissed.

### IV. AS A MATTER OF LAW, DMI CANNOT PREVAIL ON ITS CLAIM FOR BREACH OF CONTRACT.

31. As explained in Section I above, one of the indispensable elements of a claim for breach of contract is the proponent's performance pursuant to the terms of the contract.

32. Defendant admits that it did not perform its obligations under the contract. In particular, DMI failed to compensate Treasure Chest for the mailing campaign.

33. Logically, as DMI failed to perform its obligations under the Contract, its breach of contract claim must be dismissed.

Dated: New York, New York
May 24, 2018

                                    KNOX LAW GROUP, P.C.
                                    *Attorneys for Plaintiff*

By: _____
      Daniel Knox
      One Penn Plaza, Suite 2430
      New York, NY 10119
      (212) 239-1114
      dknox@knoxlaw.nyc