

One Penn Plaza
Suite 2430
New York, NY 10119
T  212.239.1114
F  917.398.1217

**DANIEL KNOX**
Managing Attorney
dknox@knoxlaw.nyc

June 2, 2018

**VIA ECF**
Hon. Naomi Reice Buchwald
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Response to Defendant's Motion in Limine to Preclude Plaintiff's Evidence
       *Treasure Chest Themed Value Mail, Inc. v. David Morris Int'l., Inc.* 17-cv-01 (NRB)

    DMI offers an incomplete and misleading rendition of the events concerning the documents at issue in its motion. Based on the complete version of events, and for the following reasons, the Court should reject DMI's request to impose the "extreme" and "rare" sanction of preclusion and its attempt thereby to subvert the truth-seeking function of this proceeding.

## Defendant is not Entitled to Judgment Pursuant to Rule 52(c)

    Defendant is not entitled to judgment against plaintiff, pursuant to Rule 52(c). DMI incorrectly asserts that Treasure Chest is required to produce its proprietary database of names and addresses of individuals to prove that it performed its obligations pursuant to the contract.

    Rather, pursuant to the express terms of the Vacation Travel Mailing Participation Agreement (the "Contract"), Treasure Chest was obligated to mail DMI's insert to at least 730,000 individuals and provide digital impressions to more than 300,000 individuals.

    As proof of performance, Treasure Chest has provided the testimony of Richard Shane, C.E.O. of Treasure Chest, along with documentary proof of mailing to 1,453,000 recipients and copies of digital impressions delivered to more than 300,000 individuals via e-mail and social media.

## Plaintiff's Evidence Should Not Be Excluded

    The defense asks this Court to "sanction" Treasure Chest under Rule 37(c)(1), for alleged Rule 26(a) discovery violations, and preclude Treasure Chest from using documents proving Treasure Chest's performance under the Contract at trial, namely proof of mailing; proof of publication of DMI's digital impressions; a communication between the parties evidencing leads provided to DMI; and a summary report of a matchback confirming that Treasure Chest's list of names and addresses for direct mail marketing was indeed viable and had value (collectively, the "Contested Documents").

Under Rule 37(c)(1), sanctions such as the exclusion of evidence may not be imposed unless the party seeking to offer the evidence failed to comply with a disclosure obligation under Rule 26(a).  *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Conventry First LLC*, 280 F.R.D. 147, 156, 158-63 (S.D.N.Y. 2012).  Once a court determines that a Rule 26(a) violation occurred, the court should consider (1) whether the party was substantially justified in failing to make the disclosure, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence, and (4) the possibility of a continuance. *Id.* at 157 (citing *Softel, Inc. v. Dragon Med. & Scientific Comm'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).  Courts in this district have explained that '"substantial justification" means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."' *Kunstler v. City of New York*, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).  Further, "the test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." *Id.* at 265 (citations and internal quotations omitted).

Preclusion is an "extreme sanction" and "harsh remedy" that "should be imposed only in rare situations."  *Coventry First*, 280 F.R.D. at 156-57 (citations omitted); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F.Supp. 2d 446, 458 (S.D.N.Y. 2007) (citations omitted). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 597 (2d Cir. 1988); *see also Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) ("[A] court should impose the least harsh sanction that can provide an adequate remedy.") (citation and internal quotations omitted).  "[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules," because preclusion undermines the truth-seeking function of the court. *Johnson Elec.*, 77 F.Supp. 2d at 458.

**A. Treasure Chest did not violate Rule 26.**

In pertinent part, Rule 26(e) imposes an obligation on a party to supplement or correct its initial disclosure in a timely manner, unless the additional information has otherwise been made known to the other party.  Accordingly, Treasure Chest cannot be said to have violated Rule 26 where DMI has been aware of the information contained in each of the Contested Documents prior to their filing as exhibits to Richard Shane's affidavit in lieu of direct testimony.

a. <u>Postal Receipt</u> (Docket No. 39, Ex. D)

On January 26, 2018, the parties and their counsel met in the office of plaintiff's counsel for deposition.  Before deposition was taken, defense counsel initiated what would become substantial settlement negotiations.  At such time, parties' counsel discussed the claims and

2

issues surrounding the parties' claims and counterclaims, including plaintiff's intent to use the receipt for postage reflecting payment of $325,666.80 as proof of performance[1].

   b. <u>Digital Impressions</u> (Docket No. 39, Ex. E)

  DMI provided the digital impressions to Treasure Chest specifically for delivery to individuals via digital means such as on Treasure Chest's social media pages. Presumably, DMI created the digital impressions. Accordingly, DMI cannot claim that it was not already aware of them.

   c. <u>June 21,2016 E-mail</u> (Docket No. 39, Ex. F)

  The e-mail is correspondence between the parties' chief officers and DMI cannot possibly claim that it was not already aware of it.

   d. <u>Matchback Summary Report</u>

  Immediately upon learning that the Court intended to schedule the trial, plaintiff's counsel disclosed the existence and description of the Matchback Summary Report in court, explaining that Treasure Chest would rely on same to prove the quality of Treasure Chest's mailing campaign. This report was only identified by Treasure Chest on or about April 20, 2018.[2]

### B. If This Court Finds Treasure Chest Failed to Disclose Documents Under Rule 26, It Was Substantially Justified Because DMI Sought Premature Closure of Discovery.

  Any delay in disclosure of documents on the part of Treasure Chest is directly attributable to DMI's untoward tactics in this matter and is either justified thereby or is otherwise reasonably harmless.

  Any delay on the part of Treasure Chest is justified where the parties were still in the midst of pretrial discovery when DMI abruptly and inexplicably sought to schedule a trial by letter motion filed on April 18, 2018. Only one day before had this Court directed the parties to fashion an appropriate protective order for the production of the contents of Treasure Chest's proprietary database of names and addresses of vacation travelers. Additionally, DMI's deposition of Richard Shane was still outstanding with no indication whatsoever by the defense that it no longer intended to take the deposition[3]. Indeed, in response to DMI's request, Treasure

---

[1] On March 23, 2018, Plaintiff produced supplemental documents to DMI. Of the documents produced, Plaintiff inadvertently included the mailing receipt for the Spring 2015 campaign instead of 2016. Defense counsel never raised the issue, and Plaintiff's counsel only discovered this oversight while preparing this response to Defendant's motion in limine.

[2] As a result of this Court's explanation that Treasure Chest would be required to prove the quality of its mailing campaign in order to prevail on its claim (see Docket No. 33 Order dated April 10, 2018), Treasure Chest reevaluated its position and investigation into internal documents to meet its burden without having to interview more than 1.4 million individuals.

[3] Plaintiff presented Richard Shane for deposition on January 26, 2018, but defense counsel declined to proceed at that time. On March 5, 2018, Plaintiff again presented Richard Shane for deposition, but defense counsel refused to begin questioning because Mr. Shane's schedule only permitted approximately 3 hours for deposition that day and

Chest raised the issue that discovery had not yet been completed and DMI's premature motion should be deemed a waiver of any contentions with regard to discovery (Docket No. 35).

### C. The Documents DMI Seeks to Preclude Are Substantial Evidence of Treasure Chest's Performance of its Obligations Under the Contract and Preclusion Would Prejudice the Truth Seeking Function of the Court.

"In determining whether preclusion or another sanction would be appropriate courts should consider . . . 'the importance of . . . the precluded [evidence].'" *Coventry First*, 280 F.R.D. at 157 (quoting *Softel, Inc.*, 118 F.3d at 961). The contested documents are critical evidence in this case and are indispensable to proving that Treasure Chest's performance under the Contract. Given the nature of this case, the preclusion of such substantial evidence of Treasure Chest's performance "would be a particularly severe result," *Coventry First*, 280 F.R.D. at 162, and would subvert the truth-seeking function of the Court. *Johnson Elec.*, 77 F.Supp.2d at 459 (rejecting preclusion of information not disclosed at deposition due to privilege assertion); *see also, e.g., In re Fosamax Prods. Liab. Litig.*, 647 F.Supp.2d 465, 273, 280-81 (S.D.N.Y. 2009) (ordering deposition regarding expert declaration first submitted in summary judgment response).

### D. DMI Has Suffered No Prejudice Where It was Apprised of Evidence It Seeks to Preclude Well In Advance of Trial.

DMI does not specifically allege that it will suffer any prejudice should the Court deny its motion to preclude the relevant documents. Instead, DMI relies solely on its position that disclosure was untimely. This supposed prejudice is entirely of DMI's own making as a result of prematurely seeking to close discovery. In any event, such proposed prejudice is easily remedied.

First, the documents do not present any avenues of discovery that DMI was precluded from pursuing. Notwithstanding ample opportunity to do so, DMI declined to pursue any depositions.

Second, the documents are harmless to the extent that they should come as no surprise to DMI. DMI was made aware of the proof of mailing, and given a description thereof, as early as January 26, 2018. *See* FN 1. It was also made aware of the Match Summary Report over 30 days prior to trial when plaintiff's counsel provided a description of same in court. The remainder of the contested documents are either communications between the parties' chief executives or materials provided to Treasure Chest by DMI for publication, all of which were already in DMI's possession.

---

defense counsel insisted upon a consecutive 7-hour deposition. Thereafter, counsel for the parties continued to discuss scheduling the deposition.

### E. Any Prejudice Suffered by DMI Can Easily Be Remedied With A Brief Continuance.

While DMI does not assert that it will suffer any prejudice due to the contested documents, its argument appears to be based entirely on an issue of timing. Notably, any issue of timeliness, and any presumed prejudice thereby, is entirely of DMI's own making. DMI created this issue when it prematurely moved to close discovery and schedule trial while there were outstanding discovery issues.

Treasure Chest asserts that this issue may be resolved with a short continuance. The Court has already allotted no more than four hours for a trial of the claims and counterclaims herein. Since that time, DMI has withdrawn its counterclaims, leaving only Treasure Chest's breach of contract claim for adjudication. As a result, the time necessary for a trial in this matter has been greatly reduced and more easily accommodated after a brief continuance.

### F. In Any Event, Any Perceived Failure on the Part of Treasure Chest Was Not the Result of Bad Faith or Callous Disregard of the Rules.

As Treasure Chest has demonstrated, it has always endeavored in good faith to comply with the discovery rules in this case, at one point even describing the Matchback Summary Report in court when it was unexpectedly faced with a short time table for trial[4].

Here, DMI has not shown good faith in pursuit of its motions. DMI squandered both the Court's and Treasure Chest's time and resources seeking to compel disclosure of Treasure Chest's proprietary database. Defense counsel filed its letter motion when he knew plaintiff's counsel would be traveling.[5] Then, after receiving a favorable decision on its motion, DMI abandoned the issue the very next day, declaring its readiness for trial notwithstanding the parties had yet to present a protective order to this Court regarding Treasure Chest's database. Notably, DMI seeks to benefit from this improper conduct, seeking an entry of Judgment pursuant to rule 52(c) on the basis that the list was not provided.

Were this Court to impose sanctions precluding evidence indispensable to Treasure Chest's claims, it would break with the general purpose of the Federal Rules to promote fairness amongst all litigants. It would also promote such untoward conduct from other defendants seeking to generate illegitimate discovery issues in order to obtain an advantage in the litigation.

Permitting a party to abruptly and unilaterally close pretrial discovery over the other party's objection and with outstanding obligations, is inherently unfair to the parties and will only result in fabricated "got you" scenarios and gamesmanship.

Respectfully submitted,

*Daniel Knox*

---

[4] Plaintiff's counsel initially requested forty-five days to submit trial affidavits and memoranda but was ultimately given three weeks.

[5] Defense counsel sought to schedule a deposition of Richard Shane on March 29, 2016. In seeking to reschedule for another date, I informed counsel that I would be traveling and advised of my date of return.