```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TREASURE CHEST THEMED VALUE MAIL,
INC.,

                Plaintiff,                    MEMORANDUM AND ORDER

        - against -                           17 Civ. 1 (NRB)

DAVID MORRIS INTERNATIONAL, INC.,

                Defendant.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Treasure Chest Themed Value Mail, Inc. ("Treasure Chest" or plaintiff) commenced this action against defendant David Morris International, Inc. ("David Morris" or defendant), seeking damages, interest thereon, and attorneys' fees for the latter's failure to perform under their "Vacation Travel Mailing Participation Agreement." The parties proceeded to a June 5, 2018 bench trial before this Court, at the conclusion of which plaintiff's motion for a directed verdict was granted. This Memorandum and Order constitutes the Court's findings of fact and conclusions of law consistent with that ruling. See Fed. R. Civ. P. 52(a).

## BACKGROUND

Two witnesses testified at trial. Plaintiff called Richard Shane, Treasure Chest's founder and chief executive officer. Affidavit of Richard Shane ("Shane Aff.") ¶ 1, May 21, 2018, Dkt.

1

No. 39.  The direct testimony of Mr. Shane was by affidavit pursuant to court order.  Defendant called David Morris himself solely as an impeachment witness.

Treasure Chest is an advertising company that "primarily employs direct mailing and digital media to deliver advertising materials to consumers."  Id. ¶ 3.  To that end, Treasure Chest "maintains a proprietary database comprised of the names and addresses" of 1.4 million "individuals in the United States who have expressed interest in vacation travel by requesting travel-related information directly from Treasure Chest and/or travel-related periodicals."  Id. ¶¶ 4-5; see Trial Transcript ("Tr.") 26:4-14.

In January 2016, David Morris contracted with Treasure Chest, pursuant to a "Vacation Travel and Mailing Participation Agreement" (the "Contract"), to include advertising materials for Arosa Cruises and AutoEurope in Treasure Chest's Spring 2016 mailing to the individuals in its database.  See Shane Aff. ¶¶ 6-8 & Ex. A.  Under the Contract, Treasure Chest was required to (1) "include [David Morris'] information on two sides of an insert in the Company's direct mail business campaign to at least 730,000 vacation travelers nationwide . . . with two logos on [the] response card;" and (2) provide "greater than 300,000 follow up weekly digital impressions . . . for two different products;" such that (3) David Morris was "guaranteed greater than 3,000 total

leads," otherwise "the following season['s]" mailing would be "free." Contract §§ 2-3. David Morris was to compensate Treasure Chest for its services with (1) $45,000 by July 1, 2016; along with (2) "up to $40,000 in airfare and hotel accommodations at fair market value," and (3) "up to $10,000 value in Arosa cruises." Id. § 3.

However, after Treasure Chest completed the mailing, David Morris refused to pay, citing the mailing's failure to generate business. See Shane Aff. ¶¶ 19, 22. Treasure Chest thereafter commenced this action, asserting a single claim for breach of contract, and seeking damages, interest thereon, and attorneys' fees. See Compl., Jan. 1, 2017, Dkt. No. 1. David Morris, in response, asserted counterclaims for fraud, unjust enrichment, and breach of contract. See Am. Answer & Countercls., June 28, 2017, Dkt. No. 13.

Following multiple contentious discovery disputes, but before deposing plaintiff or serving targeted discovery requests, David Morris requested a bench trial, which this Court scheduled for June 5, 2018. See Letter from Brian Lehman, Lehman LG LLC, to Hon. Naomi Reice Buchwald, United States District Judge, Southern District of New York (Apr. 18, 2018), Dkt. No. 34. In advance of trial, the parties exchanged proposed findings of fact and conclusions of law. Treasure Chest offered the direct testimony, via affidavit, of Mr. Shane. See Shane Aff. ¶ 1. David Morris

3

declined to produce any direct testimony and, in its submission, withdrew its fraud and breach of contract counterclaims. Def. David Morris International, Inc.'s Proposed Pre-Trial Statement Facts and Law ("Def.'s Mem. Law") § 27, May 25, 2018, Dkt. No. 41.

On the eve of trial, David Morris filed (1) motions *in limine* to exclude exhibits D, E, F, and G to Mr. Shane's affidavit as a discovery sanction under Federal Rule of Civil Procedure 37(c), and (2) a motion for judgment under Federal Rule of Civil Procedure 52(c) on plaintiff's breach of contract claim. See Letter from Brian Lehman, Lehman LG LLC, to Hon. Naomi Reice Buchwald, United States District Judge, Southern District of New York (June 1, 2018), Dkt. No. 45. At the outset of the trial, we granted in part and denied in part the former, and reserved decision on the latter. We explained the basis for each decision on the record, and do not repeat the reasoning here.[12] See Tr. 3:23-9:5.

---

[1] It does, however, bear repeating, with respect to David Morris' motions *in limine*, that its argument at trial that plaintiff was somehow required to support Mr. Shane's sworn assertions with documentation not only reflects a misconception of the rules of evidence, but is also a product of its own failure to depose, or inquire of, Mr. Shane, or to serve targeted discovery requests as this Court suggested. See Tr. 34:21-35:23. Instead, as its counsel candidly explained at trial, defendant concluded that pretrial proceedings were becoming too expensive and opted instead to forego additional discovery in favor of trial, apparently believing that such approach had strategic advantages. See id. 37:8-11.

[2] On the morning of trial, David Morris advanced yet additional motions *in limine*, this time to exclude (1) exhibits D, E, F, and G as hearsay, and (2) exhibit D, a "Reconciliation Report" from the United States Postal Service ("USPS"), as in contravention of the best evidence rule. See Tr. 3:1-21. We denied both motions, finding the latter to be particularly ill-founded. The best evidence rule generally requires the production of the original of a document to prove its contents. See Crawford v. Tribeca Lending Corp., 815

4

We granted plaintiff's motion for a directed verdict at the conclusion of its case in chief.³  Id. 38:14-15.

**DISCUSSION**

To recover for breach of contract under New York law,⁴ a plaintiff must prove, by a preponderance of the evidence: "[1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of defendant to perform; and [4] damages."  Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks omitted); accord JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 803, 893 N.Y.S.2d 237, 239 (2d Dep't 2010).  We find that Treasure Chest has satisfied this burden.

*First*, we find that a valid contract existed between the

---

F.3d 121, 126-27 (2d Cir. 2016) (citing Fed. R. Evid. 1002).  However, Rule 1003 of the Federal Rules of Evidence "permits the admission of a duplicate copy of a document unless the party seeking to oppose the admission of that document raises a genuine question as to its authenticity or shows that the circumstances make it unfair to admit the duplicate."  RCB Equities #3, LLC v. Martin, 632 F. App'x 663, 665 (2d Cir. 2015) (summary order).  David Morris made no argument that admitting the duplicate would be "unfair," and the document offers strong indicia of authenticity.  The exhibit is a printout of a receipt from the USPS website bearing an initialed and dated seal from the "Business Mail Entry Unit" in Chicago, Illinois.  Shane Aff. Ex. D.  The receipt also reflects that Treasure Chest spent more than $325,000 on the mailing.  See id.  Mr. Shane swore to the document's authenticity both in his affidavit and his trial testimony.  See id. ¶ 11; Tr. 12:17-20.  And Mr. Shane testified at trial, consistent with the receipt, that the mailing was sent from Chicago.  See Tr. 14:4-8.

³ In doing so, we rendered moot defendant's motion under Federal Rule of Civil Procedure 52(c).

⁴ The Contract provides that it "shall be governed by, and construed in accordance with, the laws of the State of New York."  Contract § 6.

5

parties. "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004). The only element in dispute is the parties' mutual assent, which David Morris argues is unsatisfied due to ambiguity in two material terms. In particular, defendant maintains that (1) Treasure Chest's obligation to provide "follow up weekly digital impressions" is ambiguous, as it is unclear whether "digital impressions" encompass anything other than emails, and (2) David Morris' obligation to compensate Treasure Chest with "up to" $40,000 in airfare and hotel accommodations and $10,000 in Arosa cruises is ambiguous, as it does not provide a definite amount. Tr. 5:24-8:6; see Def.'s Mem. Law ¶ 7 (citing Oswald v. Allen, 417 F.2d 43, 45 (2d Cir. 1969)). We disagree.

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642 (1990). Contractual language "is not ambiguous if it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." Hunt Ltd. v. Lifeschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (internal quotation marks omitted) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282 (1978)).

The term "digital impression" unambiguously refers to the

6

display of an image to a viewer in an electronic or digital format. See Impression, Investopedia, https://www.investopedia.com/terms/i/impression.asp (last visited June 19, 2018) ("An impression is a metric used to quantify the display of an advertisement on a web page. . . . Impressions are not a measure of whether an advertisement has been clicked on, only that it was displayed . . . ."). Thus, a "digital impression" would be accomplished each time David Morris' advertisement was displayed to a viewer in a website banner, on a social media platform, or in an email. Had the parties sought to limit "digital impressions" to emails, they would have used the term "email." See Tr. 6:25-7:7. Regardless, as we describe *infra*, Treasure Chest would have satisfied its obligation to provide follow up "digital impressions" using email alone. See also id. 7:8-10.

As to David Morris' agreement to compensate Treasure Chest with "up to" $40,000 in airfare and hotel accommodations and $10,000 in Arosa cruises, that language (1) is irrelevant to whether Treasure Chest performed its obligations under the Contract, and (2) clearly (and simply) means that Treasure Chest could not demand any more than the stated amounts. See id. 7:20-8:2. Put somewhat differently, David Morris may have come out ahead under the Contract if Treasure Chest had demanded, for whatever reason, less than those amounts. Id. 8:2-3.

Thus, we conclude that plaintiff has established the

7

existence of a valid contract between the parties. The upshot is not only that plaintiff has satisfied the first element of its breach of contract claim, but also that defendant cannot maintain its counterclaim for unjust enrichment. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586-87 (2d Cir. 2006); Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572, 841 N.E.2d 742, 746 (2005).

*Second*, we find that Treasure Chest adequately performed its responsibilities under the Contract.

On March 28, 2016, Treasure Chest mailed David Morris' insert to 1,453,000 individuals, almost twice the number required under the Contract. See Shane Aff. ¶¶ 8, 11 & Exs. B, D. Treasure Chest created, and included in the mailing, a response card bearing both Arosa Cruises and AutoEurope's logos. See id. ¶ 10 & Ex. C. Treasure Chest also published "all of the additional materials provided to it by [David Morris] in Treasure Chest's weekly electronic newsletters," i.e., emails, "and posted [the] same on its social media pages," including Facebook (on which Treasure Chest had 300,000 followers at the relevant time) and Instagram (on which Treasure Chest had 10,000 followers). See id. ¶¶ 12-13 & Ex. E. "Although the Contract only provided for publishing digital images for two products, Treasure Chest published digital impressions for four products: Arosa Cruises, AutoEurope, Silver Sea Cruises, and Ama Waterways." Id. ¶ 12. Finally, Treasure

8

Chest sent weekly status updates to David Morris concerning customer leads; as of June 21, 2016, David Morris had received 6,118 total leads,[5] far exceeding the 3,000 leads guaranteed under the Contract.[6]  See id. ¶ 15 & Ex. F; Tr. 29:11-17; see also Contract § 3.  David Morris' only defense, that it never received any actual business from the campaign, is simply not an element of the Contract.[7]

*Finally*, David Morris' non-performance under the Contract, and Treasure Chest's corresponding damages, are undisputed.  David Morris "failed to pay $45,000 to Treasure Chest, provide any Arosa

---

[5] Specifically, David Morris received 3,441 leads for Arosa Cruises and 2,677 leads for AutoEurope.  Shane Aff. ¶ 15.

[6] At an earlier stage of the litigation, we explained that it was "plaintiff's burden, in order to prevail on its claims, to establish the value of the service it provided, i.e., the list to which the advertisements were sent."  Order at 1, Apr. 10, 2018, Dkt. No. 33.  We find that plaintiff has satisfied this burden as well.  The recipients of Treasure Chest's mailing are "individuals in the United States who have expressed interest in vacation travel by requesting travel-related information directly from Treasure Chest and/or travel-related periodicals."  Shane Aff. ¶ 4; see Tr. 26:4-14.  In other words, Treasure Chest sent the advertisements to individuals who were proper targets for David Morris' travel products.  Moreover, Cunard Line, Royal Caribbean International, The Breakers Palm Beach, and Starwood Resorts—all well-established brands in the travel industry—also participated in the mailing, further bolstering the legitimacy of Treasure Chest's advertising list.  See Shane Aff. Ex. C, at 1.  Indeed, The Breakers Palm Beach and Cunard Lines are repeat customers, having participated in twelve and fifteen mailings, respectively, see Tr. 28:16-29:4, and Cunard Line "brought in their sister cruise lines based on the success" of prior mailings, id. 29:5-8.

[7] Treasure Chest offered to perform a "match back," free of charge, to ascertain whether any of David Morris' bookings originated from the mailing.  See Shane Aff. ¶ 16; Tr. 23:10-25.  A "match back" is "the industry way of tracking bookings," by which the list of the advertising customer's bookings are compared to the recipients of an advertisement, with the overlap being indicative of the success of the mailing.  See Tr. 21:6-23:7.  David Morris, however, declined this invitation.  Shane Aff. ¶ 24.

9

cruises, or . . . honor Treasure Chest's requests for hotel accommodations beyond an accumulation of $13,000." Shane Aff. ¶ 19. Thus, we find that plaintiff proved defendant's failure to perform and resulting damages. Plaintiff, therefore, has satisfied all four elements of its breach of contract claim.

The only issue remaining is Treasure Chest's entitlement to damages for defendant's breach. In a contract action, a court should leave the injured party in as good a position as he would have been if the contract had been fully performed. See Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C., 91 N.Y.2d 256, 261, 692 N.E.2d 551, 553 (1998). Treasure Chest accordingly seeks, and is entitled to, $82,000 in damages, i.e., the $95,000 due on the Contract less the $13,000 of in-kind accommodations already conferred. See Restatement (Second) of Contracts § 359(1) (Am. Law Inst. 1981) ("Specific performance . . . will not be ordered if damages would be adequate to protect the expectation interest of the injured party.").

In addition to damages, plaintiff seeks interest accrued on the amount due under the Contract. Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and shall begin to run "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(a)-(b); see id. § 5002; see also U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991) ("[A]

plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."). New York's statutory prejudgment interest rate is 9% per annum. See N.Y. C.P.L.R. § 5004. But if the applicable contract "provides a rate at which interest is to be calculated, then the contractual rate, rather than the statutory rate . . . governs." Bank of Am., N.A. v. Brooklyn Carpet Exchange, Inc., No. 15cv5981 (LGS)(DF), 2016 WL 8674686, at *5 (S.D.N.Y. May 13, 2016) (quoting Nuera Commc'ns, Inc. v. Telron Commc'ns USA, Inc., No. 00 Civ.9167(RMB)(FM), 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002)), report and recommendation adopted, 2016 WL 3566237 (S.D.N.Y. June 27, 2016). In such cases, "prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment." Id. (citing NML Capital v. Republic of Argentina, 621 F.3d 230, 240 (2d Cir. 2010)). However, "[i]n order to prevail at a rate higher than the statutory 9% per annum, the contract itself must clearly specify the rate charged." Microban Prods. Co. v. API Indus., Inc., No. 14 Civ. 41(KPF), 2014 WL 1856471, at *19 (S.D.N.Y. May 8, 2014) (quoting Gates Rubber Co. v. Vehicle Parts Warehouse Corp., 952 F. Supp. 132, 133 (E.D.N.Y. 1996)).

The Contract provides that Treasure Chest will tender a "1.5% monthly finance fee" "[i]n the event [of] monies past due." Contract § 4. Thus, Treasure Chest is entitled to prejudgment

11

interest of 1.5% per month on the "monies past due": $45,000, accruing after August 1, 2016.[8] See Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 630 (S.D.N.Y. 2011). Treasure Chest is also entitled to prejudgment interest on the remaining $37,000 due on the Contract. However, the Contract does not "clearly specify" that the 1.5% per month rate applies to these in-kind payments, as opposed to solely "monies." See Microban Prods., 2014 WL 1856471, at *19. Accordingly, the 9% per annum rate applies. Further, as the Contract does not specify a date on which the remaining amounts were due, and in the absence of evidence of when they were demanded, prejudgment interest on the $37,000 amount began accruing after January 1, 2017, when Treasure Chest commenced this litigation. See Cyberchron Corp. v. Calldata Sys. Dev., Inc., 831 F. Supp. 94, 118 (E.D.N.Y. 1993), aff'd in part, vacated in part on other grounds, 47 F.3d 39 (2d Cir. 1995).

Finally, plaintiff seeks an award of attorneys' fees and costs incurred in bringing this action, citing language in the Contract that "[i]n the event of monies past due . . . costs necessary to collect past due balance [to be] paid by" David Morris. Contract § 4. Under New York law, a court "should not infer a party's intention to provide counsel fees as damages for a breach of

---

[8] Although David Morris' $45,000 payment was due on July 1, 2016, see Contract § 3, Treasure Chest only seeks interest accruing after August 1, 2016, see Shane Aff. at 4.

12

contract unless the intention to do so is unmistakably clear from the language of the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) (internal quotation marks omitted) (quoting Hopper Assocs., Ltd. v. AGS Comps., Inc., 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905 (1989)). The language in the Contract does not satisfy this high standard.

## CONCLUSION

Based upon the foregoing findings of fact and conclusions of law following trial in this matter, we find for plaintiff on its sole claim for breach of contract, and against defendant on its sole remaining counterclaim for unjust enrichment. We enter an award of $82,000, plus 1.5% prejudgment interest per month on $45,000 after August 1, 2016, and 9% prejudgment interest per annum on $37,000 after January 1, 2017. The Clerk of the Court is respectfully directed to enter judgment for plaintiff, terminate all pending docket entries (Nos. 18, 29, 30, 45), and close this case.

Dated: New York, New York
June 25, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

<u>Counsel for plaintiff</u>:         Daniel Knox
                                     Knox Law Group, P.C.

<u>Counsel for defendant</u>:        Brian E. Lehman
                                     Julie R. Solarz
                                     Lehman LG LLC