UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

TREASURE CHEST THEMED VALUE MAIL,
INC.,

 Plaintiff,

    -against

DAVID MORRIS INTERNATIONAL, INC.,

Defendant.
--------------------------------------------------------------x

17-0001 (NRB)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO REGISTER JUDGMENT UNDER 28 U.S.C. § 1963**

Brian Lehman
Lehman LG LLC
244 5th Ave., Suite B258
New York, NY 10001
Counsel for Defendant

TABLE OF CONTENTS

I.   PROCEDURAL BACKGROUND ............................................................................... 2

II.   TREASURE CHEST'S ATTORNEY CANNOT SERVE AS A WITNESS AND AS AN ADVOCATE ON THE MOTION ................................................................................... 3

III. TREASURE CHEST HAS NOT SHOWN "GOOD CAUSE" FOR REGISTERING THE JUDGMENT ............................................................................................................... 8

IV. CONCLUSION...................................................................................................... 15

Defendant David Morris International Inc. ("DMI") respectfully submits this memorandum of law in opposition to the motion by Plaintiff Treasure Chest Themed Value Mail, Inc. ("Treasure Chest") made pursuant to 28 U.S.C. § 1963 ("Section 1963") seeking an order allowing Treasure Chest to register this Court's final judgment in federal courts in Washington, Texas, Delaware and Florida (Dkt. #64).

Treasure's Chest motion should be denied for two reasons. *First*, the only evidence submitted by Treasure Chest is a sworn declaration by its own attorney, Daniel Knox, in violation of Rule 3.7 of the New York Rules of Professional Conduct, which prohibits an attorney from simultaneously serving as an advocate and a necessary witness to a motion. Either the Court must disallow the declaration or take the more drastic step of disqualifying Treasure Chest's attorney.

*Second*, even if the Court were to allow the declaration, Treasure Chest has not produced evidence sufficient for this Court to make a finding of "good cause" and thereby allow registration of the judgment in other federal courts prior to the United States Court of Appeals for the Second Circuit's decision of DMI's appeal. In the absence of good cause, 28 U.S.C. § 1963 does not allow registration of the judgment until after the appeal so as to avoid "the complicated unraveling that might become necessary if a judgment, post recognition and enforcement outside the rendering forum, is overturned on direct review." *In re Professional Air Traffic Controllers Org. (PATCO)*, 699 F.2d 539, 544-45 (D.C. Cir. 1983).

Treasure Chest has not – and cannot – produced any evidence that DMI has transferred, or is attempting to transfer, its assets during DMI's appeal. Nor does Treasure Chest have any evidence that DMI has engaged in any conduct in an attempt conceal its assets or otherwise

1

avoid payment of the judgment. Nor can Treasure Chest show DMI has engaged in any evasiveness in response to post-judgment discovery.

In the absence of such evidence, Treasure Chest has not shown "good cause" under Section 1963 and Treasure Chest's motion should be denied.

## I.      PROCEDURAL BACKGROUND

On January 1, 2017, Treasure Chest filed a complaint against DMI asserting a claim for breach of contract under New York law (Dkt. #1). This Court's subject matter jurisdiction was based on diversity of citizenship: Plaintiff is a New York corporation, Defendant is a California corporation, and "the matter in controversy exceed[ed] the sum or value of $75,000." 28 U.S.C. § 1332(a).[1]

After a bench trial, the Clerk of the Court entered judgment against Defendant and in favor of Treasure Chest (Dkt. #49). DMI timely filed a notice of appeal to the United States Court of Appeals for the Second Circuit (Dkt. #50). DMI has not posted a bond to secure the damages provided for in the Judgment pending appeal. On January 7, 2019, DMI submitted its brief and appendix to the Second Circuit.

On January 15, 2019, Treasure Chest filed its motion to register the judgment pursuant to 28 U.S.C. § 1963 (Dkt. #64).[2] On January 22, 2019, Treasure Chest requested that it be allowed

---

[1] *See also* Dkt. #1 (Compl. ¶ 3 ("Defendant is a corporation duly formed and existing under the laws of the State of California with its principal office located [in California]."); *id.* ¶ 3 ("Defendant is a citizen of the State of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332.")).

[2] Plaintiff failed to comply with the Local Rules, which require (1) a notice of motion, (2) a memorandum of law, and (3) any supporting affidavits and exhibits. See S.D.N.Y. Local Rule 7.1(a). Plaintiff did not file a notice of motion "specif[ing] the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." S.D.N.Y. Local Rule 7.1(a)(1). Plaintiff merely filed its memorandum of law as a "motion" and attached its attorney's declaration as an exhibit. The Local Rules are available at http://nysd.uscourts.gov/rules/rules-2018-10-29.pdf.

to submit its brief to the Second Circuit by on March 22, 2019, which was so ordered by the Court.

Since judgment was entered, Treasure Chest has not engage in any post-judgment discovery as permitted by Rule 69 of the Federal Rules of Civil Procedure despite the fact that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts[,]" and "[t]he scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Treasure Chest has not issued any document requests, interrogatories, subpoenas or deposition notices to DMI or third parties.

DMI now respectfully opposes Treasure's Chest motion to register the judgment.

## II.    TREASURE CHEST'S ATTORNEY CANNOT SERVE AS A WITNESS AND AS AN ADVOCATE ON THE MOTION

In support of its motion, Treasure Chest has submitted the sworn declaration of Daniel Knox, "the principal attorney of Knox Law Group, P.C., counsel for the plaintiffs in this action." Dkt. 64-1 (Knox Decl. ¶ 1). Mr. Knox states in paragraph 5 of the declaration: "I conducted a post-judgment investigation into Defendant's assets and have been unable to locate any assets belonging to Defendant in New York. *Id.* ¶ 5. Mr. Knox then proceeds to make a dozen sworn statements including five statements based on his own "information and belief" (¶¶ 7, 11, 15, 16, 17).

Allegations based on information and belief raise a red flag because they give "rise to an inference that the pleader lacks knowledge of underlying facts to support the allegations made, and is instead engaging in speculation to an undue degree." *Delphix Corp. v. Actifo, Inc.*, No. 13 Civ. 4613, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (rejecting pleading on "information and belief" as insufficient under Rule 11 of the Federal Rules of Civil Procedure).

3

When an attorney states that something is made on "information and believe," the attorney is

hedging because the statement may be wrong and the attorney does not want to be accused of

perjury or otherwise putting a false statement before the Court.

A review of the statements in the declaration shows that Mr. Knox's statements are false

or speculative. For example, Mr. Knox states: "Defendant also maintains an active registration

with the Florida Secretary of State entitling it to conduct business in Florida." Dkt. 64-1 (Knox

Decl. ¶ 8). This statement is false because Treasure Chest sued DMI, which is "a corporation

duly formed and existing under the laws of the State of California with its principal office

located [in Calfornia]." Dkt. #1 at (Compl. ¶ 3). Not only is the fact that DMI is a California

corporation never been questioned, but it is a fact upon which this Court's subject matter

jurisdiction was based.

There is no evidence before this Court that DMI (a California corporation) maintains "an

active registration with the Florida Secretary of State entitling it to conduct business in Florida."

*Id.* A review of the Florida Secretary of State's website shows that the company known as David

Morris International Inc. that is maintaining a registration in Florida is a Delaware corporation –

a different corporate entity that was never sued.[3]

The fundamental problem with the declaration is that the Court must make findings of

fact that depend on Mr. Knox's credibility and testimony as all but the first five paragraphs of the

declaration are disputed. What is the basis for Mr. Knox stating that the website,

_____

[3] Rule 3.3(a)(1) of the N.Y. Rules of Professional Conduct provides that "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, rule 3.3. Given that the Florida Secretary of State's website shows that the company maintaining a registration in Florida is a Delaware corporation (not a California corporation), counsel for Treasure Chest should correct its false statement on the reply brief or sooner.

http://www.davidmorrisintl. com, belongs to DMI (a California corporation) against whom judgment was entered? What is the basis for Mr. Knox stating that the California corporation's clients include Paul Gauguin Cruises, Orion Expedition Cruises, Windstar Cruises and MSC Yacht Club? What is the basis for Mr. Knox stating that the California Corporation receives revenue from Auto Europe, LLC? What was the extent of Mr. Knox's "post-judgment investigation?" Did this "investigation" involve more than using google or other online search engines?

Under this situation, the declaration in support of the motion (the only evidence in support of it) must be rejected or Mr. Knox must be disqualified from representing Treasure Chest. Rule 3.7 of the New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200.0, makes it clear that an attorney usually may not be a witness on a significant issue of fact.[4] Commonly referred to as the "advocate-witness" rule, Rule 3.7(a) states:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.

As the Second Circuit has explained, there are four risks of harm to the integrity of the judicial system implicated by the advocate-witness rule:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an

---

[4] Local Rule 1.3 requires attorneys appearing in the Southern District of New York to comply with the New York State Rules of Professional Conduct.

individual assumes the role of advocate and witness both, the line between
argument and evidence may be blurred, and the jury confused.

*Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). "These concerns matter

because, if they materialize, they could undermine the integrity of the judicial process." *Id.* at

180. The risks to the integrity of the judicial process are substantial here, particularly given the

incentive that Mr. Knox has to speculate, as he has, or otherwise distort the truth as a result of

bias in favor of his client on this motion.

Treasure Chest could have easily avoided this situation. DMI has conceded that Rule 69

of the Federal Rules of Civil Procedure "permits discovery in the manner provided by the federal

rules or in the manner provided by the state." Dkt. 61. "The rules governing discovery in

postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML*

*Capital, Ltd.*, 573 U.S. 134, 138 (2014). Rule 69(a)(2) provides: "In aid of the judgment or

execution, the judgment creditor . . . may obtain discovery from any person — including the

judgment debtor — as provided in these rules or by the procedure of the state where the court is

located." Fed. R. Civ. P. 69(a)(2); *see also* 12 C. Wright, A. Miller, & R. Marcus, FEDERAL

PRACTICE AND PROCEDURE § 3014, at 160 (2d ed. 1997) (court "may use the discovery devices

provided in [the federal rules] or may obtain discovery in the manner provided by the practice of

the state in which the district court is held").

As the Second Circuit has explained, "broad post-judgment discovery in aid of execution

is the norm in federal and New York state courts[,]" and "[t]he scope of discovery under Rule

69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a

judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also*

*AmTrust N. Am., Inc. v. Preferred Contractors Ins. Co.*, No. 16 MC 0340 (CM), 2016 WL

6208288, at *2 (S.D.N.Y. Oct. 18, 2016). "Discovery of a judgment debtor's assets is conducted

6

routinely under the Federal Rules of Civil Procedure." *First City, Texas-Houston, NA v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002). Moreover, it is "not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets . . . Nor is it unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made." *EM Ltd.*, 695 F.3d at 207-08.[5]

Treasure Chest has not used any of the discovery devices that are given to a judgment creditor including "ability to question the judgment debtor about the nature and location of assets that might satisfy the judgment." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993). Treasure Chest has not served upon DMI any interrogatories, document requests or notices of deposition or even made any informal efforts to ask DMI about its assets or their location.

Instead, Treasure Chest has elected to insert its own attorney into the proceedings as its only witness on a motion after the attorney conducted a purpored "post-judgment investigation" and submitted a sworn declaration with statements that are either false or based on speculation. Under such circumstances, the Court should either find that the declaration is not sufficient or, in the alternative, disqualify the attorney from representing Treasure Chest and conduct a fact-finding hearing on which to base the Court's decision on Treasure Chest's motion to register the judgment.

---

[5] *See also Minpeco v. Hunt*, No. 81 Civ. 7619, 1989 WL 57704, at *1 (S.D.N.Y. May 24, 1989) (quoting *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir.1982) ("A judgment creditor is entitled to discover the identity and location of any of the judgment debtor's assets, wherever located")); *Caisson Corp. v. Cnty. West Bldg. Corp.*, 62 F.R.D. 570 331, 334 (E.D. Pa.1974) ("[Under Rule 69(a),] the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.").

### III.   TREASURE CHEST HAS NOT SHOWN "GOOD CAUSE" FOR REGISTERING THE JUDGMENT

Assuming, *arguendo*, that the declaration is valid and Treasure Chest's attorney is not disqualified from representing it, Treasure Chest has nonetheless failed to show "good cause" to register the judgment in other districts. The statute states:

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.

28 U.S.C. § 1963.

Congress added the language permitting registration on a showing of "good cause" in 1988 because the "final by appeal" requirement of § 1963 allowed the debtor to delay or avoid payment by transferring his assets to another jurisdiction while the appeal was pending. The purpose of the good cause provision was to prevent a judgment debtor from hiding assets in an unknown jurisdiction. *See* COURT REFORM AND ACCESS TO JUSTICE ACT: HEARING BEFORE THE H. SUBCOMM. ON COURTS, CIVIL LIBERTIES, AND THE ADMIN. OF JUSTICE OF THE COMM. ON THE Judiciary, 100th Cong. 6, 44, 44-45 (1987).

It is true that some courts, including courts in this District, have found "good cause" where the defendant does not possess assets in the home district but possess assets in another jurisdiction ("the assets test").[6] *See, e.g.*, *Ind.-Mich. Corp. v. Sisk Fertilizer-Lime Serv., Inc.*, No. 89 Civ. 2735, 1992 WL 159150, at *1 (N.D. Ill. June 29, 1992). But this interpretation of "good cause" is far too expansive and ignores "[t]he fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation,

---

[6] The Second Circuit has never interpreted "good cause" as used in 28 U.S.C. § 1963 and thus there is no controlling decision.

but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129,

132 (1993); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) (invoking "the cardinal

rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not,

depends on context."). Statutes "cannot be construed in a vacuum. It is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a view to

their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101

(2012).[7]

The primary way to enforce a judgment outside of the jurisdiction where judgment was

entered (sometimes referred to as a "foreign jurisdiction") is for the judgment creditor to bring a

separate action in that jurisdiction on the judgment. *See Milwaukee Cnty. v. M.E. White Co.*, 296

U.S. 268, 271 (1935) (explaining that "suits upon a judgment, foreign or domestic, for a civil

liability . . . were maintainable at common law upon writ of debt, or of *indebitatus assumpsit*");

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 100 cmt. b (Am. Law Inst. 1971) (stating that

"the method usually employed in this country for the enforcement of a foreign judgment for the

payment of money is to bring a new action in the nature of debt upon the judgment in the forum

State and to obtain a new judgment there"); Hessel E. Yntema, *The Enforcement of Foreign

Judgments in Anglo-American Law*, 33 MICH. L. REV. 1129, 1136 (1935). This is sometimes

referred to as a "domestication action" because it "domesticates" the "foreign judgment."

*Res judicata* and collateral estoppel apply to the new action under the Full Faith and

Credit Clause of the U.S. Constitution. *See* U.S. CONST., Art. IV, §1. Thus, the judgment creditor

merely files a complaint, attaches a copy of the original judgment, and proceeds forward with the

---

[7] As the Supreme Court explained in *Bailey v. United States*, 516 U.S. 137 (1995), words can mean different things even in the same sentence: "I use a gun to protect my house, but I've never had to use it." *Id.* at 148-49. Thus, "good cause" as used in other legal contexts shines little light on the meaning of "good cause" in 28 U.S.C. § 1963.

enforcement. *See, e.g.*, *Slade v. Dickinson*, 82 F. Supp. 416 (W.D. Mich. 1949) (judgment from United States District Court for the Southern District of New York sued on in the Western District of Michigan); *Bartlet v. Knight*, 1 Mass. (1 Tyng) 401, 404 (1805) (stating that "[b]y the rules of common law, the judgment of a court of justice is a ground of action for the party recovering").

A critical feature of a domestication action is that ***a judge*** presides over it and protects the due process rights of all parties, including third parties to the dispute.[8] For example, if a dispute arises over who owns particular assets or how to untangle the judgment creditors' assets from the assets of third parties, the judge may resolve the dispute. In addition, "the judge in the independent action may exercise discretion to stay that action because of an appeal from the judgment for which enforcement is sought." *In re Professional Air Traffic Controllers Org. (PATCO)*, 699 F.2d 539, 544 (D.C. Cir. 1983). In fact, state courts usually stay the domestication action pending the determination of the appeal. *See id.* at 544 n.18.

In 1948, Congress passed legislation allowing the registering of judgments in federal court as part a larger reform of the Judicial Code. *See* 62 Stat. 958 (effective as of September 1, 1948) (codified at 28 U.S.C. § 1963); *see also Ohio Hoist Manufacturing Co. v. LiRocchi*, 490 F.2d 105, 108-09 (6th Cir. 1974) (appendix to opinion summarizing legislative history of 28 U.S.C. § 1963). "Registration is a rapid procedure that does not require the intervention of a judge." *PATCO*, 699 F.2d at 544. Registration "is 'merely a matter of having the clerk of the court in which the judgment is registered enter the pertinent provisions of the sister court's

---

[8] A judge presiding over the enforcement is particularly important here, where the judgment creditor may seek to register the judgment against corporations that share the same name but were formed in other jurisdictions and are separate corporate entities that were never named in the complaint.

judgment on the judgment docket.'" *Id.* (quoting Note, *Registration of Federal Judgments*, 42 IOWA L. REV. 285, 288-89 (1957)).[9]

Registration in another district results has three primary consequences. *First*, a judgment lien is created on all real property belonging to the judgment debtor in that district when a certified copy of the abstract of judgment is properly filed. *See* 28 U.S.C. § 3201 ("A judgment in a civil action shall create a lien on all real property of a judgment debtor on filing a certified copy of the abstract of the judgment . . . ."). *Second*, writs of execution for enforcement may be obtained in that district. *See* Fed. R. Civ. P. 69(a)(1). *Third*, if the other district is in a different state, the practice and procedure of that other state apply to the judgment enforcement. *See* Fed. R. Civ. P. 69(a)(1)-(2).

Undoing or fixing a registration if an appellate court overturns a judgment on direct review involves a "complicated unraveling." *PATCO*, 699 F.2d at 544. "A judgment based on an earlier judgment is not nullified automatically by reason of the setting aside, or reversal on appeal, or other nullification of that earlier judgment[.]" *Id.* at 544 n.20 (Restatement (Second) of Judgments § 16 comment b (1982)). Rather, the later judgment – the judgment that was entered only because of the registration – must go through additional proceeding that seeks restitution of benefits received under it. *See id.*

---

[9] *See also Arenas v. Sternecker*, 109 F. Supp. 1, 2 (D. Kan. 1953) ("The term 'registered' . . . seems to connote a filing with the clerk and an entering upon the records in that office, in substantially the same manner as a judgment rendered by this court."); *Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 128 F.Supp. 697, 699 (D. Haw. 1955) ("Registration is purely a ministerial act in the enforcement of a foreign judgment."); Registration in Federal District Court of Judgment of Another Federal Court Under 28 U.S.C.A. § 1963, 194 A.L.R Fed. 531 § 2[b] (2004) ("To register a judgment, counsel should file a certified copy of the judgment with the clerk of the registering court, who will enter it on the records in substantially the same manner as if judgment had been rendered by the registering court.").

In 1988, Congress decided that, despite the problems with unraveling registration in every district, courts could allow a registration to stop a judgment debtor who is attempting to avoid payment by transferring his assets to another jurisdiction while the appeal was pending. *See* COURT REFORM AND ACCESS TO JUSTICE ACT: HEARING BEFORE THE H. SUBCOMM. ON COURTS, CIVIL LIBERTIES, AND THE ADMIN. OF JUSTICE OF THE COMM. ON THE Judiciary, 100th Cong. 6, 44, 44-45 (1987). Attempting to hide assets is obviously acting in bad faith.

But the mere fact that there are assets in another district that the judgment creditor has not attempted to hide or transfer, or failed to disclose, should not qualify as "good cause" to register the judgment. Indeed, the district courts that have adopted the "assets test" have implicitly recognized that this this test may impose substantial costs on other courts and thus only allowed the registration in specific districts. This approach, however, ignores the plain language of the statute: "A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment *in any other* district . . . . " 28 U.S.C. § 1963 (emphasis added).

As the Supreme Court held in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), "any" means "every" or "all." *Id.* at 1353. "Read naturally, the word 'any' has an expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5 (1997); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994); *Collector v. Hubbard*, 79 U.S. (12 Wall.) 1, 15 (1871) (it is "quite clear" that "no suit shall be maintained in any court" was statutory language that "includes the State courts as well as the Federal courts").[10]

---

[10] *See, e.g.*, *TMR Energy Ltd. V. State Property Fund of Ukraine*, No. 03-34 (D.D.C. Aug. 27, 2004) (granting leave to register "in any United States District Court"); *Spray Drift Task Force v. Burlington Bio-Med. Corp.*, 429 F. Supp. 2d 49, 51-52 (D.D.C. 2006) (authorizing "registration . . . in other U.S. District Courts").

Courts hesitate to allow registration in any other district court because they recognize the drastic nature of this step and the potential costs it can impose on courts across the country if the judgment is overturned on direct appeal. But the answer is not to rewrite the statute. Interpretation of a statute "is not legislation and must avoid 'that retrospective expansion of meaning which properly deserves the stigma of judicial legislation.'" *Addison v. Holly Hill Fruit Products*, 322 U.S. 607, 618 (1944) (quoting *Kirschbaum Co. v. Walling*, 316 U.S. 517, 522 (1942)).

Rather, the answer is to give a correct interpretation to the meaning of "good cause," which in context means a judgment creditor who has (1) transferred, or is attempting to transfer, its assets to another jurisdiction during the appeal, or (2) engaged in an attempt to conceal its assets or otherwise avoid payment, or (3) acted in an evasive or manipulative manner in response to post-judgment discovery. In the absence of such evidence, the Court should not enter a finding of good cause sufficient to cause registration "in any other district" in the United States. 28 U.S.C. § 1963.

In this case, there is no evidence that DMI is attempting to transfer or hide its assets. Moreover, DMI has not acted in an evasive manner because Treasure Chest has not used any of the post-judgment discovery tools given to it under the Federal Rules of Civil Procedure despite the fact that judgment was entered over six months ago. The briefing before the Second Circuit will soon be complete.

Finally, it should be noted that Treasure Chest can still seek to register the judgment in the *state* courts of Washington, Texas, Delaware and Florida. This is true because in 1948 the National Conference of Commissioners on Uniform State Laws ("Commissioners") promulgated the first Uniform Enforcement of Foreign Judgments Act ("1948 Act"), applicable to judgments

13

as an alternative to common law actions of enforcement. *See* Robert A. Leflar, *The New Uniform Foreign Judgments Act*, 24 N.Y.U.L.Q REV. 336, 337-38 (1949). The 1948 Act provided a summary judgment procedure for actions on so-called foreign judgments (*i.e.*, judgments from outside that jurisdiction).[11]

The Commissioners followed the 1948 Act with a revision in 1964, the Revised Uniform Enforcement of Foreign Judgments Act ("RUEFJA"), 13 U. L. A. 149 *attached as* Exhibit 1. The RUEFJA is modeled after 28 U.S.C. § 1963 and provides for the filing of foreign judgment, notice to judgment debtor at last known address, and execution within specified period unless a stay is granted following an appropriate showing by judgment debtor. Forty-seven states have enacted recognition procedures based on the RUEFJA (all states but California, Vermont, and Connecticut). *See Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*, 87 F. Supp.3d 573, 584 (S.D.N.Y. 2015); *see also* Ronald A. Brand, *Federal Judicial Center International Litigation Guide: Recognition and Enforcement of Foreign Judgments*, 74 U. PITT. L. REV. 491, 496 (2013) (Appendix D).

If this Court does allow the registration of the judgment in other federal courts, those courts would be required to follow rules and the procedures of *the state* where the court is located. *See* Fed. R. Civ. P. 69(a)(1)-(2). There is no substantial difference between the procedure that Treasure Chest may use immediately (and without this Court's permission) in Washington, Texas, Delaware and Florida and in federal court except for one: While DMI can

---

[11] While referred to as an "Act," the Uniform Enforcement of Foreign Judgments Act is not legislation but rather a proposed state law that has to be adopted by the state legislature.

seek a stay pending the outcome of the direct appeal under Section 4 of the RUEFJA, 28 U.S.C. § 1963 does not allow for a court to enter a stay once a judgment is registered.[12]

## IV.  CONCLUSION

DMI respectfully submits that Treasure Chest's motion to register should be denied. Treasure Chest's motion is based on a declaration that should be disallowed as an attorney may not be a witness on contested issues of fact. Even if the declaration were allowed, it is filled with statements that are either speculative or false. Moreover, nothing in the declaration provides sufficient evidence for a finding of good cause under 28 U.S.C. § 1963. The fact that Treasure Chest has no evidence is its own fault as Treasure Chest has failed to use any of the post-judgment discovery tools available to it under Rule 69 of the Federal Rules of Civil Procedure.

For these reasons, Treasure Chest's motion to register the judgment under 28 U.S.C. § 1963 should be denied.

Date:  January 28, 2019

Respectfully submitted,
/s/ *Brian Lehman*
Brian Lehman
Lehman LG LLC
Counsel for Defendant
David Morris International, Inc.,
a California corporation

*All counsel served by CM/ECF*

---

[12] The fact that 28 U.S.C. § 1963 does not allow for a stay makes sense if courts are only finding "good cause" when a judgment creditor has transferred or hidden assets or attempted to do so or is otherwise acting in good faith. If judgment could be registered simply because assets were located there and not in the home district, it is reasonable to presume Congress would have added a stay provision to 28 U.S.C. § 1963 just as state courts implemented prior to 1988.